### No. 4455.

### The State ex rel. St. Charles Railroad Company v. John Cockrem, Administrator, and als.

The civil government of the city of New Orleans can not be permitted to deny the rights derived by the relators in this case from their contract with said city on the ground that it was under military authority at the time, when, after the cessation of that military authority, those rights have been, in part, frequently recognized and ratified by its ordinances. That contract was an entirety. The city had no right to sever its obligations, so as to ratify one part of the contract and reject another.

The city, having for a number of years received without objection the consideration of the contract, should not be heard when disputing the contract itself.

The plea that the parties had forfeited the right of way by voluntarily abandoning the construction of railroads in certain streets, and by failing to construct said roads within the time limited by the contract, is not made out, when proved that they were prohibited to do the work by an injunction from a third party; and because the injunction taken in September, 1866, was not dissolved before June, 1872, it is not to be inferred that it was kept so long in force by the wish and connivance of the relators, when the city was a party to the injunction suit, and having the same right to push the case that the relators had, did not do so.

The city surveyor was bound, when called upon, to furnish the requisite lines and levels for the building of the road—a ministerial duty which was imposed upon him by the sixth section of the original ordinance authorizing the construction of the road.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble, J. Breaux, Fenner & Hall*, for relators and appellees. *Geo. S. Lacey*, City Attorney, and *Frank N. Butler*, for defendants and appellants.

Taliaferro, J. The relators set forth that they obtained by contract with Nicholson & Co. all the rights and privileges the latter were entitled to under a contract with the City of New Orleans, entered into in December, 1865, to construct a railroad to connect the depot of the Pontchartrain Railroad with that of the New Orleans, Jackson and Great Northern Railroad; that under that contract, to all the rights of which the relators are subrogated, it is provided that the City Surveyor shall furnish the lines and levels for the road and give, in his specifications, full directions how the work is to be done, the kind of material to be used, etc; that Nicholson & Co. completed that portion of the railroad above Canal street, and which relators have had constantly in operation, paying to the city the stipulated *bonus;* that relators were proceeding according to contract to complete the portion of the road lying below Canal street when they were arrested by a

writ of injunction, issued by the Fourth District Court at the instance of Romanzo W. Montgomery, to which the City of New Orleans was a party; that said injunction remained in force until June, 1872, when it was dissolved; that thereupon the relators called upon the City Surveyor to furnish them with the lines and levels required in order that they might commence the work, and were refused on the ground that he could only act under an order from the Administrator of Public Improvements; that relators then applied to John Cockrem, Administrator of Public Improvements, for the same purpose, and were likewise refused by him. The relators then filed a petition in the Eighth District Court, praying that a *mandamus* issue against Cockrem, the Administrator of Public Improvements, and Bell, the City Surveyor, to compel them to furnish the lines and levels required. To this proceeding the city of New Orleans and C. E. Girardey and others, to whom the city in November, 1871, had granted the privilege of constructing the unfinished portion of the railroad, were made parties. A rule *nisi* was granted. To this Cockrem and Bell responded, denying all right in the relators to be furnished with the lines and levels they demanded. They deny that the relators derived any right from the assignment to them from Nicholson & Co., who derived no right from the alleged contract they made with the city in 1865 and 1866, the same having been entered into in contravention of a prohibitory order rendered by the military authority then paramount in the State. That the relators connived at the injunction proceeding of Montgomery, which was illegally and wrongfully kept in existence for several years in order that the relators might obtain an undue advantage; that the city of New Orleans, considering the invalidity of the pretended grants, privileges and franchises asserted by the relators and the waiver, non-user, negligence and abandonment of the same on the part of the relators, conveyed the right of way and the consequent right to lines and levels to the streets in controversy to other parties with whom the relators can not legally interfere. Respondents object that the law does not authorize the issuing the writ of mandamus in the case at bar. Girardey & Co. adopted all the defenses set up by the City Surveyor and the Administrator of Public Improvements. The rule was made absolute and the court ordered that John Cockrem, Administrator of Public Improvements, furnish to the relators the lines and levels required to enable them to construct the road according to the specifications in the original contract.

From this judgment the respondents appealed.

On the part of the defendants it is contended that the city, having repudiated the contracts with Nicholson & Co., and the pretended rights of their subrogees the St. Charles street Railroad Company, in so far as these contracts accorded the right of way for a railroad on

Royal and Bourbon streets; and moreover the city authorities having entered into contracts with Girardey and others for the construction of a railroad on those streets, no city officer had any right to disregard such action of the municipal authorities, and consequently no authority to furnish the relators with the lines and levels they required. That under the existing state of facts the furnishing to the relators the facilities they demand, so far from being a mere ministerial duty which the proper officer might by mandamus be compelled to perform, would be a violation of his duty and a setting at naught the will of the corporate authorities. That the relators can not, therefore, in this case, proceed by mandamus.

In defense it is set up, that, by a military order rendered by General Canby, on the ninth of February, 1866, the several bureaus of the municipal government of the city of New Orleans, created by and acting under military authority, were injoined and prohibited from granting any franchise or right to corporations, for a term extending beyond such period as the civil government of the city may be reorganized and re-established under and in conformity to the constitution and laws of the State; and that no grant of that character should extend beyond the time when the questions relative to those rights may be determined by competent authority.

To this it is answered that the ordinances of the city authorities authorizing the building of this railroad and the contract entered into in conformity therewith, between the city and Nicholson & Co., for the building of the same, took place before the military order of General Canby was rendered, and that nothing in that order justifies the conclusion that it intended to annul that or any other contract of the kind entered into prior to its promulgation; and that the order of General Canby of February 9, 1866, was so understood, for the city by ordinance of sixteenth of December, 1867, after the transfer of the contract by Nicholson & Co. to the St. Charles Street Railroad Company expressly substituted the latter to all the rights, privileges and obligations of Nicholson & Co. in their contract. And later still, on the twenty-sixth of July, 1870, the city, by an ordinance to that effect, allowed the St. Charles Street Railroad Company to make certain alterations the company desired to make in the track of the road. Besides, it is shown that the city, by ordinance of eleventh May, 1869, reduced the bonus to be paid on a certain consideration. It is further shown that the St. Charles Street Railroad Company have been constantly operating that part of the said road lying above Canal street ever since they acquired it under the contract with Nicholson & Co., and that the city has regularly received the stipulated bonus on passengers carried without objection. It seems, then, as contended by the relators, that the civil government of the city since the termina

tion of the military authority, has frequently recognized and ratified by its ordinances the rights of the relators under the Nicholson contract. That contract was an entirety, embracing as well the line of the road below Canal street as that portion above it. The city, it would seem, has no right to sever its obligations, to ratify one portion of its contract and reject another. The right of way was not given to Nicholson & Co., but was sold to them, and the consideration was not only that they should incur the expense of building the railroad, but also that they should pay to the city a certain bonus or percentage upon the fare of each passenger carried. This bonus it appears has been regularly paid by Nicholson & Co. and their subrogees, and been received by the city as the consideration of the contract between the city and Nicholson & Co. The city having for a number of years received without objection the consideration of its contract should not now be heard to dispute the contract itself.

On the part of the city it is held, that the relators, if they ever had the right of way for a road below Canal street, along Bourbon and Royal streets, have forfeited it by virtually abandoning the construction of the road along those streets, and have failed to construct the road within the time required by the contract. It is in proof, that Montgomery, a property holder on Royal street, obtained an injunction, in September, 1866, prohibiting the building of the contemplated road on that street, and that this injunction was not dissolved until June, 1872. We are unable to find in the evidence anything making good the charge of the defendants, that the injunction was kept in force so long by the wishes and by the connivance of the relators. The city was a party to this injunction suit, and had the same right to push the case to trial that the relator had, but did not do so.

We conclude that the city was without authority to enter into the contract with Girardey and others, granting to them the right of way to construct below Canal street the road projected originally by the contract of the city with Nicholson & Co., which contract was afterward extended and entered into with the relators. The contract made with the relators being valid and binding, their rights under it cannot be affected by the subsequent agreement between the city and Girardey & Co. The latter party, when cited, came forward, and, without exception, answered to the merits of the case. The city surveyor was bound, when called upon, to furnish the requisite lines and levels for the building of the road, a ministerial duty, which was imposed upon him by the sixth section of the original ordinance authorizing the construction of the road. The proceeding in this case by mandamus seems not to be irregular.

It is, therefore, ordered that the judgment of the district court be affirmed, with costs.